IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| O&M HALYARD, INC., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:25-cv-1568-AJT-WBP |
| GUIDEPOINT GLOBAL, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## ORDER

In this medical device trademark action,[1] Plaintiffs Owens & Minor Distribution, Inc. ("Owens") and O&M Halyard, Inc. ("Halyard") (collectively, "Plaintiffs") seek reversal of a decision by the U.S. Patent and Trademark Office's ("PTO") Trademark Trial and Appeals Board ("TTAB"), which enforced the allegedly infringing marks of Defendant Guidepoint Global, LLC ("Guidepoint") over their own, and otherwise seek to enforce their marks through various other statutory, common law, and declaratory judgment claims related to Defendant's alleged infringement. Defendant filed a Motion to Dismiss [Doc. No. 18] ("the Motion") Plaintiffs' claims in Counts II, III, IV, VI and VII[2] primarily on grounds that Plaintiffs failed to adequately allege valid ownership of 14 of their 15 marks (the "junior marks") given that they alleged or otherwise referenced documents that attributed first use dates for those junior marks that post-dated Defendant's marks. For the reasons outlined below, the Motion is **GRANTED.**

---

[1] Plaintiffs filed their Complaint on September 18, 2025, and an Amended Complaint on December 4, 2025. [Doc. No. 12]. Defendant filed the Motion on December 31, 2025 [Doc. No. 18].
[2] The Motion seeks partial dismissal of Count II and full dismissal of Counts III, IV, VI, and VII.

## I.  BACKGROUND

Plaintiff Owens and its subsidiary Halyard are Virginia corporations engaged in the business of manufacturing and selling medical equipment, providing inventory management and data analytics, and computer services. [Compl.] ¶¶ 4-5, 12.  The Amended Complaint alleges that beginning in 2002, Halyard and its predecessors have used a family of trademarks using the term "Qsight" for one of their lines of business, a healthcare industry inventory management software platform and data analytics service.[3] *Id*. ¶¶ 14, 26. Plaintiffs claim that the family includes 15 different trademarks: four registered marks, eight with pending "intent to use" applications before the PTO and three common law marks. *Id*. The first and primary such mark, Qsight®, was registered through the PTO on April 30, 2019, with a first use date of December 31, 2002. *Id*. A chart summarizing key information about Plaintiff's marks as alleged is below:

| No. | Name | Status | Claim Priority Date(s) |
| --- | --- | --- | --- |
| 1 | Qsight (class 35)[4] | Registered | First Use: Dec. 31, 2002<br>Registered: Apr. 30, 2019 |
| 2 | Qsight (class 42) | Registered | First Use: Jan. 2021<br>Registered: May 18, 2021 |
| 3 | Qsight RFID | Registered | First Use: 2020<br>Registered: Nov. 7, 2023 |
| 4 | Qsight Kanban | Registered | First Use: Aug. 2022<br>Registered: Jan. 2, 2024 |

---

[3] The QSight business encompasses other products and services, including vendor and payment management software, bone and tissue implant tracking services, deposit bins for healthcare supplies and a cabinet that supports automatic tracking of supplies using radiofrequency identification ("RFID") technology. [Compl.] ¶¶ 28-29, 31. Approximately six of Plaintiffs' 15 claimed marks are involved with planned expansions into products and services, including a barcode scanner and additional data analytics and software business components. *Id*. ¶¶ 30, 32, 34-37.

[4] The PTO's Acceptable Identification of Goods and Services Manual sorts registered marks into 45 different classes which correspond to categories of goods and services. Class 35 covers advertising, business management, business administration, and office functions; Class 42 covers computer, scientific and technological services and related research and design. U.S. Patent and Trademark Off., Goods and Services, https://www.uspto.gov/trademarks/basics/goods-and-services (last visited Mar. 3, 2026). It is common for the owner of a mark to register under multiple classes. *Id*.

| 5 | Qsight DNA | Pending Application | App. Filed May 12, 2020 |
| --- | --- | --- | --- |
| 6 | Qsight Smart Scan | Pending Application | App. Filed Aug. 25, 2025 |
| 7 | Qsight Community | Pending Application | App. Filed Jan. 17, 2025 |
| 8 | Qsight (stylized) | Pending Application | First Use: May 1, 2025<br>App. Filed: May 20, 2025 |
| 9 | Qsight Prism | Pending Application | App. Filed: October 31, 2025 |
| 10 | Qsight Insight | Pending Application | App. Filed: January 17, 2025 |
| 11 | Qsight Marketplace | Pending Application | App. Filed: January 17, 2025 |
| 12 | Qsight Vision | Pending Application | App. Filed: January 17, 2025 |
| 13 | Qsight Tissue Management | Common law mark | [None] |
| 14 | Qsight Bill OnlyManagement | Common law mark | [None] |
| 15 | Qsight Qsuite | Common law mark | [None] |

Plaintiffs allege that they have invested millions of dollars in the QSight business, including significant sums toward "develop[ing] extensive marketing and sales materials, attend[ing] trade shows, creat[ing] social media and other targeted online campaigns, and plac[ing] advertisements in healthcare journals, podcasts, and other blogs and articles." *Id.* ¶¶ 42-43.

On December 29, 2020 and March 9, 2021, respectively, the PTO registered Defendants' two trademarks, GUIDEPOINT QSIGHT (U.S. Registration No. 6231233) and QSIGHT (U.S. Registration No. 6285787). *Id.* ¶ 48. As alleged in the Complaint, Guidepoint claims a date of first use of January 2, 2018 for both marks (fifteen years after Plaintiffs' claimed 2002 date of first use of its Qsight mark, registered on April 30, 2019). *Id.* ¶¶ 16-17, 48-49). Defendant's marks were registered for a substantially similar purpose, described as "information in business matters and business consulting and information services; compiling and providing business industry data and analytics for market research purposes" in International Class 35 and

"providing a website and digital filing-sharing services featuring technology that enables subscribers to receive updates of business industry market data and market trends via the website and the digital files" in International Class 42." *Id*. ¶ 48

On July 27, 2021 and July 27, 2022, Halyard filed TTAB petitions for cancellation of Guidepoint's two Qsight marks that were consolidated into one petition shortly thereafter.[5] *See O&M Halyard, Inc. v. Guidepoint Global, LLC*, Cancellation No. 92077680 (T.T.A.B. July 25, 2025) ("TTAB Decision"). Guidepoint then filed an answer in which it disputed Halyard's ownership of its claimed marks and brought counterclaims for cancellation of Plaintiffs' two original registered Qsight marks (Classes 35 and 42) on a theory that they were owned by Owens rather than Halyard, or alternatively had been abandoned due to "naked licensing."[6] *Id*. ¶¶ 60-63; TTAB Decision at 4.

On July 25, 2025, the TTAB issued a final decision in which it (1) denied Halyard's petition on the grounds that it failed to prove both priority and likelihood for confusion between any of the parties' Qsight products, and (2) granted Guidepoint's counterclaim on the grounds that Owens (and not Halyard) owned the first two registered Qsight marks when Halyard filed for registrations of those marks on April 30, 2019 and May 18, 2021 respectively, and the registrations were therefore void *ab initio*. *Id*. ¶ 64; TTAB Decision at 25, 28, 77.

In Count I, Plaintiffs appeal from the TTAB decision [Compl.] ¶¶ 2, 7. They also bring seven additional claims against Guidepoint for: (1) trademark infringement, false designation of

---

[5] Specifically, Halyard's consolidated TTAB petition asserted ownership of its four registered marks and two applications (for Qsight DNA and Qsight Smart Scan). TTAB Decision at 3-4.
[6] Guidepoint initially sought to bring additional counterclaims for cancellation of Halyard's other two registrations (Qsight RFID and Qsight Kanban), and all four of its then-pending applications; however, the TTAB denied in part its motion to amend its answer and these additional counterclaims did not proceed. TTAB Decision at 4-5.

4

origin, trademark counterfeiting, trademark dilution, and unfair competition under sections 32(1) and 43(a) the Lanham Act, 15 U.S.C. §§ 1051 *et. seq.* (Counts II and III); (2) trademark counterfeiting under the United States Trademark Act (15 U.S.C. 1114(1)) (Count IV); (3) trademark dilution under section 43(C) of the Lanham Act, 15 U.S.C. § 1125(c) (Count V); (4) trademark infringement under the Virginia Trademark and Service Mark Act, Va. Code § 59.1-92.15 (Count VI); (5) trademark infringement and unfair competition under Virginia common law (Count VII);[7] and (6) Declaratory Judgment (Count VIII). As relief, they seek reversal of the TTAB decision, money damages, and a declaratory judgment that Halyard is the owner of each of the Qsight trademarks. [Compl.] ¶¶ 2-3.

Defendant's motion to dismiss [Doc. No 18] ("the Motion") seeks partial dismissal of Counts II, III, IV, VI, and VII (but not Counts I, V and VIII) based on two arguments: first, that Count II should be dismissed with respect to Plaintiff's unregistered marks because section 32(1) of the Lanham Act prohibits only infringement of registered marks, and second, that all of Plaintiffs' claims with respect to fourteen of the fifteen claimed trademarks, as alleged in Counts III, IV, VI, and VII, should be dismissed because Plaintiffs had not and could not allege that they were the first to use those marks, and therefore have not plausibly claimed that they validly owned those marks. Plaintiffs concede that Count II should be dismissed as to Plaintiff's eleven non-registered marks but contend that they have adequately pled facts giving rise to a claim for relief for at least three of the fourteen challenged marks for the purposes of Count II, and for all the challenged marks for the purposes of Counts III, IV, VI, and VII. [Opp.] at 13, 16–17.

---

[7] Plaintiffs' Amended Complaint includes a seventh count that is incorrectly labeled as Count Six despite being the seventh count listed in the Amended Complaint. Defendant's Motion and this Order refers to the Count comprising Paragraphs 114-120 of the Amended Complaint as "Count Seven" or "Count VII."

5

## II. LEGAL STANDARD

### (A) Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This does not require detailed allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "When a . . . complaint contains sufficient allegations of material facts to inform a defendant of the nature and character of the claim, it is unnecessary for the pleader to descend into statements giving details of proof in order to withstand [a motion to dismiss]." *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 517 (2014) (quoting *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993)). The Court must accept all well-pled facts in the complaint as true and construe all facts in the light most favorable to Plaintiffs. *See SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015).

### (B) Pleading Trademark Infringement

The federal and Virginia state law claims in Counts II-IV, VI, and VII all require the same elements of proof as they are all corollaries to one another. *See Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (the necessary elements to state a claim under 15 U.S.C. § 1114 and 15 U.S.C. § 1125 are largely the same); *see also Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 162 (4th Cir. 2014) ("Virginia common law trademark infringement and unfair competition claims require the same proof, including a likelihood of confusion, as the Lanham Act offenses[]"). Those elements are: (1) that the plaintiff owns a valid mark; (2) that the defendant used the mark 'in commerce' and without plaintiff's authorization;

(3) that the defendant used the mark (or an imitation of it) 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (4) that the defendant's use of the mark is likely to confuse consumers." *Inst. for Just. v. Media Grp. of Am., LLC*, No. 15-cv-1410, 2015 WL 7758845, at *2 (E.D. Va. Nov. 30, 2015).

### (C) TTAB Appeals

Section 21 of the Lanham Act permits a party dissatisfied with a TTAB decision to appeal to the United States Court of Appeals for the Federal Circuit or to bring a civil action in federal district court. See 15 U.S.C. § 1071(a), (b); *see also Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.,* 69 F. Supp. 3d 175, 193 (D.D.C. 2014). While a District Court considering a TTAB appeal may consider new evidence (unlike in the case of appeals to the Federal Circuit), findings of fact made by the TTAB must be accepted as controlling, unless the contrary is established by substantial evidence. *Material Supply Int'l, Inc. v. Sunmatch Indus. Co., Ltd.,* 146 F.3d 983, 990 (D.C.Cir. 1998) (citing *Esso Standard Oil Co. v. Sun Oil Co.,* 229 F.2d 37, 40 (D.C. Cir. 1956)).

## III.   DISCUSSION

### (A) Lack of Priority for Junior Marks (Counts II-IV, VI, VII)

Defendant's core contention is that except for their original Qsight trademark registered on April 30, 2019, Plaintiffs have not adequately alleged, and cannot in good faith allege, that they were the first to use any of their other fourteen claimed marks, and therefore have not adequately alleged ownership of their other marks as required to plead trademark infringement.[8] [Opp.] at 10–11 (*quoting Moke Am. LLC v. Moke Int'l Ltd.*, 126 F.4th 263, 272–73 (4th Cir.

---

[8] The Motion and this Order refer to the remaining 14 marks as the "junior marks" or "junior Halyard marks."

2025) ("Moke") ("Of course, a showing of ownership of a valid and protectable mark requires proof of both priority of use and the mark's distinctiveness.").[9]

As a preliminary matter, Plaintiffs contend that priority of use does not need to be specifically alleged as part of an ownership allegation, and that a mark's lack of priority is rather an affirmative defense. The Fourth Circuit has required that "[t]o acquire ownership of a trademark it is not enough to have invented the mark first *or even to have registered it first*; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267 (4th Cir. 2003) (quoting *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.1996)) (emphasis added). While "priority of use" as such is not listed as an element of a trademark infringement claim, it is nonetheless an indispensable element of the ownership element, and when first use dates are alleged, as in the Amended Complaint for both Plaintiffs' marks and Defendant's allegedly infringing marks, those first use dates must be considered in determining whether Plaintiffs have plausibly alleged valid ownership in support of an infringement claim. *See Moke*, 126 F.4th at 271 ("[S]o long as a person is the first to use a particular mark to identify his goods in a given market, and so long as that owner continues to make use of the mark, he is entitled to prevent others from using the mark to describe their own goods in that market.") (quoting *George & Co. v. Imagination Ent. Ltd.*, 575 F.3d 383, 400 (4th Cir. 2009))).

Here, Plaintiffs seek relief with respect to four registered marks and eleven unregistered marks, with a specific date of first use in commerce alleged for only five of their fifteen claimed

---

[9] Both the parties' briefing and the case law use the term "priority" to refer both to (a) whether a given mark was used before an allegedly-infringing mark; and (b) the requirement for a trademark plaintiff to plead such prior use. Marks with priority are referred to as "senior" while those without are "junior," and a senior mark's date of first use is referred to as the "priority date."

8

marks; specifically, December 31, 2002 for Qsight (class 35); January 2021 for Qsight (Class 42); 2020 for Qsight RFID; August 2022 for Qsight Kanban; and May 1, 2025 for Qsight (stylized) (application pending. Plaintiffs also allege, however, that Defendants claim a first use date of January 2, 2018 for both their marks and that "[u]pon information and belief, since their dates of first use, Guidepoint has marketed the services sold under Guidepoint's QSIGHT Marks to the healthcare industry." [Am. Compl.] ¶¶ 48, 49, 55. As a result, as alleged, only one of the first use dates for Plaintiffs' marks (December 31, 2002 for the Qsight class 35 mark) precedes Defendant's claimed first use date for either of its marks.

    Nevertheless, Plaintiffs contend that they have adequately alleged facts that, when viewed most favorably as is required on a motion to dismiss, allow a reasonable inference that they own their junior marks (and thus, necessarily, that those junior marks have priority over Defendant's marks). In support of that position, Plaintiffs contend that for the purposes of ruling on the Motion to Dismiss, the Court should not consider the first use dates claimed by the Defendant, as alleged in the Amended Complaint, but must simply accept Plaintiffs' bare allegations of ownership at this point and postpone determining which marks in fact have priority based on a summary judgment record or at trial, since determining priority of use depends on more than what the Defendant claims to be the first use dates for its marks. That position is unavailing for several reasons.

    First, in determining whether the Plaintiffs have plausibly alleged ownership of their marks, they are required to allege facts sufficient to raise that inference; and in making that determination the Court is required to accept Plaintiffs' allegations, not only in a light most favorable to the Plaintiffs, but as a whole. Here, the Amended Complaint has affirmatively alleged that Defendants have claimed first use dates for Defendant's two marks that predate the

first use date of all but one of Plaintiffs' mark.  Plaintiffs have not alleged that for some reason those first use dates should be disregarded, but rather have alleged facts that support their being considered first use dates, specifically that since those first use dates defendants "have marketed the services sold under" those marks. Moreover, the TTAB decision, referenced in the Amended Complaint and the subject of Plaintiff's appeal in Count I, made a factual finding after its cancellation of the original Qsight (classes 35 and 42) that "Respondent's registrations have an earlier constructive use date than Petitioner's remaining registrations and applications."[10] TTAB Decision at 30. In their appeal of the TTAB decision, set forth in Count I, Plaintiffs seek review of the TTAB's rulings based on new evidence related to the issues of licensing and likelihood of confusion, and do not allege any new evidence bearing on priority. *Id*. ¶ 78.[11]

Alternatively, based on the presumption of ownership established by a mark's registration, Plaintiffs argue that they have adequately pled ownership for at least their three

---

[10] Given that the TTAB decision is the basis for Plaintiffs' appeal in Count I, it would appear to be a document integral to the Amended Complaint whose substance is properly considered on a motion to dismiss, *see Decoster v. Becerra*, 119 F.4th 332, 336 n.1 (4th Cir. 2024), particularly since Section 21(b) of the Lanham Act authorizes the record before the TTAB to be part of the record in this Court, *albeit* upon motion of a party. *See* 15 U.S.C. § 1071(b)(3); *see also Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.,* 525 F.3d 8, 13 (D.C. Cir. 2008) ("In a Federal Circuit appeal, the PTO transmits its record to the court, which "shall review the decision from which the appeal is taken on the record' … by contrast, in a § 21(b) action, the PTO does not automatically transmit its record to the court; rather, any party may, on its own motion, enter the record into evidence). Nevertheless, the TTAB's findings with respect to the priority as between Plaintiffs and Defendant's marks are not essential to the Court's determination that Plaintiffs have failed to plausibly allege valid ownership of the junior marks, given the allegations of the Amended Complaint concerning the various first use dates attributed to both Plaintiffs' and Defendant's marks. *See Brice v. Jenkins*, 489 F. Supp. 2d 538, 541 (E.D. Va. 2007) ("[T]he use of a few conclusory legal terms will not insulate a plaintiff's complaint from dismissal when the factual allegations in the complaint do not support the legal conclusion") (*citing Trulock v. Freeh*, 275 F.3d 391, 405 n. 9 (4th Cir.2001)) (cleaned up).
[11] While Plaintiffs have conclusorily alleged in its appeal from the TTAB decision in Count I that the TTAB "refused to consider substantial evidence demonstrating Halyard's ownership of the Qsight trademarks" ([Am. Compl.] ¶ 77), the substance of its appeal, as alleged in the Amended Complaint, is that the TTAB "refused to consider substantial evidence demonstrating Halyard's ownership of the Qsight Family of Trademarks[,]" [Am. Compl.] ¶ 65, clearly referencing the TTAB's granting Guidepoint's counterclaims based on Halyard's lack of ownership, as opposed to its denial of Halyard's petition based (in part) on Halyard's date of first use. *Id*. ¶ 63; *see also* TTAB Decision at 25, 28, 77. For these reasons, no reasonable inference in support of their ownership claims based on first use can be drawn from Plaintiffs' appeal of the TTAB decision.

*registered* junior marks, *viz.,* Qsight (class 42), Qsight RFID, and Qsight Kanban. [Opp.] at 14. But that position is equally unavailing. In that regard, none of the alleged first use dates for any of these three marks precedes the first use date for either of Defendant's marks.[12] And as alleged in the Amended Complaint, the TTAB cancelled the Qsight (class 42) mark, [Am. Compl.] ¶ 64; *see also* [TTAB Decision] at 25, thereby rebutting or eliminating any prima facie showing or presumption of ownership as to that mark. Moreover, while registration of a mark serves as "'*prima facie* evidence of … the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark,'" (*Inst. for Just. v. Media Grp. of Am., LLC,* No. 1:15-CV-1410, 2015 WL 7758845, at *3 (E.D. Va. Nov. 30, 2015) (quoting 15 U.S.C.A. § 1057(b))), to establish liability for trademark infringement "it is not enough to have invented the mark first *or even to have registered it first*; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Emergency One*, 332 F.3d at 267. The Court may therefore consider Plaintiff's ownership claims based on the totality of the facts alleged and those facts, even when viewed most favorably to the Plaintiffs, fail to make plausible that any of Plaintiffs' junior marks have a priority of use over Defendant's mark.

For these reasons, the plausibility of Plaintiffs' claims depends solely on whether the first use date of their first registered mark can be imputed to its other marks under the family of marks doctrine or a theory of "tacking."

---

[12] Plaintiffs' Qsight (class 42) mark was first used by Plaintiffs in "Jan. 2021" (specific date not specified) and registered on May 18, 2021. [Am. Compl.] ¶ 14(b). The Qsight RFID mark was first used by Plaintiffs in "2020" (specific date not specified), and registered on November 7, 2023. [Am. Compl.] ¶ 14(c). The Qsight Hanban mark was first used in "Aug. 2022" (specific date not specified) and registered on November 7, 2023. [Am. Compl.] Defendant's GUIDEPOINT Qsight and Qsight were registered on December 29, 2020 and March 9, 2021, respectively, and as alleged in the Amended Complaint, Guidepoint claims a date of first use of January 2, 2018 for both marks (fifteen years after Plaintiffs' claimed 2002 date of first use of its Qsight mark, which was then registered on April 30, 2019). *Id*. ¶¶ 16-17, 48-49.

11

### (B) Family-Based Priority

Plaintiffs contend that they had established Qsight as a family of marks by using the marks "in such a manner as to create common exposure and recognition . . . such that the Qsight element in itself indicates [Plaintiffs] as the common origin." [Am. Compl.] ¶16. Based on that contention, they argue that all fifteen of their marks constitute a "family" of marks, and the Court should therefore treat all their marks as having the same first use date as the Qsight (class 35) mark, December 31, 2002, which precedes the first use date of Defendant's mark.,

A family of trademarks is created when there is a pattern of usage of a common element across a group of trademarks such that the common element is indicative of the origin of the family. *See J&J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1462 (Fed. Cir. 1991). "To establish a family of marks, a proponent must show not only that it has advertised and promoted its marks together so as to create the public perception of a common source, but also that the surname is distinctive." *Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*, No. 07-cv-5804, 2009 WL 959775 at *4 (S.D.N.Y. 2009) (citations omitted). Courts have recognized that if a family has been established, the owner of that family may have protections against an infringer's use of marks properly belonging to that family which it has not yet used. *See id.* at *3 (citing *McDonald's Corp. v. McBagel's, Inc*., 649 F.Supp. 1268 (S.D.N.Y. 1986) (discussing McDonald's "Mc____" product line as an example of a family of marks).

In support of its family-based priority claim, Plaintiffs point to their conclusory allegation that their pre-2018 use of the Qsight mark was used "in such a manner as to create common exposure and recognition" as their junior marks ([Am. Compl.] ¶16); but that conclusory allegation is not supported by any facts and the facts that are alleged are inconsistent with any such allegation. In that regard, as alleged in the Amended Complaint, none of the junior marks

existed until years after the Qsight (class 35) mark and there are no factual allegations to suggest that they were advertised or promoted together with that Qsight (class 35) mark beginning in 2002 or even thereafter so as to create public perception of a common source. *See Truescents LLC v. Ride Skin Care, LLC*, Opp. No. 91158556, 2006 WL 3326525 (TTAB 2006) (no "GENUINE[]" family of marks was proven because opposer failed to prove that it had advertised and promoted its asserted GENUINE marks together as a family); *see also Nike, Inc. v. WNBA Enters., LLC*, Opp. Nos. 91160755 & 91160763, 2007 WL 763166 (TTAB 2007) (no family of trademarks consisting of "S" with a star because opposer had not sufficiently promoted the marks together to the public).

Plaintiffs' "tacking" claim is based on the doctrine that "a party may clothe a new mark with the priority position of an older mark…[if] the original and revised marks are "legal equivalents" in that they create the same, continuing commercial impression." *Hana Fin., Inc. v. Hana Bank,* 574 U.S. 418, 419–20 (2015). Based on this doctrine, Plaintiffs contend that their junior marks and the original Qsight mark are so similar that those junior marks may be regarded as having the same priority date as the original, and that their case may therefore proceed because the Supreme Court has stated that tacking is best adjudicated by a jury. [Opp.] at 16–17 (citing *Hana Fin., Inc.,* 574 U.S. at 426).

In *Hana Fin., Inc.,* relied upon by the Plaintiffs, the Supreme Court explains that the doctrine of tacking was created out of a recognition that "trademark users ought to be permitted to make certain modifications to their marks over time without losing priority." *Hana Fin., Inc.,* 574 U.S. at 419–20. Consistent with this purpose, the legal equivalent test cited and adopted by the Supreme Court in that case requires such similarity that consumers consider both as the same mark. *Id*. at 420 (citing *Van Dyne–Crotty, Inc. v. Wear–Guard Corp*., 926 F.2d 1156, 1159). As

courts have recognized, "tacking applies only in exceptionally narrow circumstances" and the requirement that the marks be legal equivalents must therefore be construed strictly such that Plaintiffs' marks (which are expressly admitted to be separate members of a family) are not eligible. *Hana Fin., Inc.,* 574 U.S. at 421 (cleaned up). Here, Plaintiffs have clearly failed to allege facts which make plausible that their junior marks are the legal equivalents of the original Qsight (class 35) mark.

For the above reasons, Plaintiffs' two theories of family-based priority do not remedy their lack of factual allegations showing priority as to their junior marks, and they have failed to plausibly allege ownership of those marks.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED** that the Motion [Doc. No. 18] be, and the same hereby is, **GRANTED** and Counts II, III, IV, VI, and VII be , and the same hereby are, **DISMISSED** as to all of Plaintiffs' junior marks, and those Counts shall proceed only with respect to Plaintiffs' Qsight Trademark (Class 35) mark (U.S. Reg. No. 5739878), together with Counts I, V and VIII, dismissal of which was not requested in the Motion.

The Clerk is directed to forward copies of this order to all counsel of record.

March 11, 2026

Alexandria, Virginia

Anthony J. Trenga
Senior U.S. District Judge